**Anna RAMM et al., Appellants,**

**v.**

**Adele RAMM et al., Appellees.**

**No. 13009.**

Court of Civil Appeals of Texas.

Galveston.

Sept. 20, 1956.

Rehearing Denied Oct. 11, 1956.

Charles L. Krueger, Austin, for appellants.

W. D. Bryan, Sealy, W. I. Hill, Bellville, Richard Spinn, Brenham, for appellees.

HAMBLEN, Chief Justice.

This suit was instituted by Anna and Henry Ramm, appellants, in the District Court of Austin County, seeking to set aside and cancel a certain deed executed by appellants on January 21, 1955, conveying an undivided ⅔ interest in and to an undivided ½ interest in 360 acres of land. Such cancellation was sought upon the ground that the execution and delivery of the deed had been procured by fraud practiced by appellee, Adele Ramm. Trial of the cause was before a jury which, at the conclusion of the evidence, returned a verdict upon which the court entered judgment denying appellants all relief sought.

The issues presented on this appeal can best be understood when prefaced by a recitation of the material facts.

John and Francisca Ramm were husband and wife. John died in September, 1918, and Francisca died in August, 1922. Both died intestate and seised and possessed of considerable personal property and two tracts of land, one of 235 acres and one the 360 acres here involved. They were survived by four children, who were their sole and only heirs at law. These children were Anna and Henry, the appellants herein, Joe, an appellee herein, and Emil, now deceased and who was the husband of Adele, an appellee herein. About six months after the death of their mother, the above named four children and heirs at law of her estate decided to partition the properties in severalty between themselves. To accomplish this purpose they employed the services of Alex Jones, a justice of the peace. The method employed by him to accomplish his clients' purpose was unique but, as we view it, entirely effective. All four children met with the justice of the peace; the latter thereupon received bids from each child on each piece of property belonging to the estate; the highest bidder was required to pay his bid in cash. After all properties belonging to the estate were thus disposed of, the necessary deeds and other evidence of transfer were prepared and executed. The justice of the peace then divided the funds received from this "sale" between the four children and the transaction was completed. While not material, it appears from the evidence that Joe became the purchaser of personalty consisting of cattle, cotton and farm equipment; Henry purchased a note which he owed to his mother; Joe and Anna together purchased the 235-acre tract of land, and Emil purchased the 360-acre tract. Emil's purchase was evidenced by a deed from his brothers and sisters conveying their interest in the tract to him dated January 12, 1923, and reciting a consideration of $4,320 paid in cash.

After this transaction Emil and his wife, Adele, who is appellee herein, claimed the 360-acre tract of land so conveyed to him continuously until Emil's death intestate in 1954. On January 21, 1955, Anna, Joe and Henry, the surviving brothers and sister of Emil, executed and delivered to Adele a deed purporting to convey the 360-acre tract here involved to Adele for a recited consideration of $10 and love and affection. It is this deed which appellants, Anna and Henry, seek to have set aside and cancelled. Joe did not join them in this suit but was made a party defendant. He filed an answer disclaiming any interest in the land and ratifying and affirming both the 1923 and the 1955 deeds above described.

Appellants alleged, as grounds for cancellation of their deed of 1955 to Adele, that the same was procured by Adele upon the representation that the instrument which they were asked to sign (the 1955 deed) was simply an instrument which would permit Adele to collect annual delay rentals due upon said land; that such

representation was false; that it was made by Adele, knowing of its falsity and for the purpose of defrauding appellants; that appellants were illiterate and uneducated persons; that they believed and relied on the representation made to them by Adele, and that but for such representation and their reliance on the truth thereof they would not have executed the 1955 deed. Appellants also alleged inadequacy of consideration for the deed.

Appellees filed pleas of limitation and general and special denials of appellants' allegations.

The special issues submitted to the jury and the jury's answers thereto were as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that the heirs of John and Franzisca Ramm divided the estate of their parents?

"Answer 'yes' or 'no'  Yes .

"If you have answered Special Issue No. 1 'yes', then in that event only, answer the following questions:

"Special Issue No. 2

"Do you find from a preponderance of the evidence that Emil Ramm received the land described in the deed dated January 18, 1923, as his part of his parents' estate?

"Answer 'yes' or 'no'  No .

"If you have answered Special Issue No. 2 'no', then in that event only, answer question No. 3:

"Special Issue No. 3

"Do you find from a preponderance of the evidence that Emil Ramm did not purchase said land described in said deed dated January 12, 1923 with community funds?

"Answer 'He did not' or 'He did'  He did

"By 'community funds' is meant earnings or income received during marriage, ex-cluding separate gifts to husband or wife or separate funds of each, not mingled. 'Income includes money borrowed, if any, during marriage.'

"Special Issue No. 4

"Do you find from a preponderance of the evidence that plaintiffs knew that the instrument, which they signed, dated January 21, 1955, was a deed?

"Answer 'yes' or 'no'  Yes

"If you have answered Special Issue No. 4 'yes', then in that event only, answer the following:

"Special Issue No. 5

"Do you find from a preponderance of the evidence that any consideration was given for said deed?

"Answer 'yes' or 'no'  Yes"

The judgment adverse to them is attacked by appellants in twelve points of error, however in their brief they assert that there were only two issues raised by the pleadings, first, whether the deed of January 21, 1955, was obtained by fraud and deception and without any consideration, and second, whether the 360 acres was inherited by Emil Ramm and was, therefore, his separate property, or was purchased by him with community funds and, therefore, community property of Emil and Adele Ramm. Since both litigants are in agreement that these two issues comprehend the merits of this lawsuit, we deem it appropriate to dispose of them before considering appellants' assigned points of error. We treat the issues in inverse order.

It was appellees' position, set forth in their defensive pleadings, that the transaction between the four children of Francisca Ramm, together with Alex Jones, the justice of the peace, in 1923 did not constitute a partition between such four children of the estate of their mother and father, but in law constituted a sale and that as a result of such transaction Emil

Ramm became a "purchaser" of the 360 acres here involved. It is further their position that since the funds used by Emil Ramm in this purchase were community funds, the property became the community property of Emil and Adele Ramm, and upon the death of Emil became the property of Adele Ramm. In line with this theory, they requested and the court submitted Special Issues Nos. 2 and 3.

We consider appellees' position in this respect to be erroneous, as a matter of law. Neither do we think that their position is helped in any respect by the jury verdict responsive to Special Issues Nos. 2 and 3. Those issues submitted to the jury questions of law which were not properly within their province to determine. It appears to this Court that the method employed by the justice of the peace for the purpose of dividing their parents' estate between the four children was just as effective a partition, and nothing more, as if a partition had been effected in the more usual and customary manner. The only community interest which Adele Ramm could have received by virtue of the deed from Henry, Joe and Anna to Emil would be an interest equal to the extent that the price paid for the 360 acres exceeded an equal one-fourth value of the total estate divided. We do not deem it necessary to pursue the matter further because it is our opinion that the conclusions which the record compel with respect to the first issue above mentioned render the second completely immaterial.

Regardless of what may have been the legal effect of the 1923 transaction by which Emil Ramm acquired the 360 acres here involved and regardless of whether on his death intestate in 1954 Henry and Anna acquired any interest in said property by inheritance, they did on January 21, 1955, by a deed perfectly regular and valid on its face convey that interest to Adele Ramm. In order to prevail in this lawsuit the burden is upon them to have that deed cancelled and set aside. The grounds upon which they sought such relief have already been set forth.

We have carefully examined the record in this case from the standpoint of the support or lack thereof for the jury verdict in response to Special Issue No. 4. The evidence bearing most directly upon the issue consists of the testimony of Henry and Anna on the one hand, and Adele on the other. Henry and Anna testified that Adele represented to them that the 360 acres was subject to an oil and gas lease upon which delay rentals were due and that in order to collect such delay rentals it would be necessary for them to sign the instrument which she tendered to them. Adele, on the other hand, testified unequivocally that she represented to them that the instrument tendered was a deed conveying their interest in this 360 acres to her. Other evidence of circumstantial character was offered in support of both lines of testimony. We do not consider it necessary to discuss that evidence further for we are of the opinion that the testimony of Adele Ramm, standing alone, is sufficient to support the jury answer to Special Issue No. 4. It will be noted that by that answer the jury found that the appellants knew that the instrument which they signed, dated January 21, 1955, was a deed, thus destroying the only ground of attack made by them upon the validity of that deed. Their argument that the nature of the consideration recited in the deed is insufficient and invalid, as a matter of law, is entirely without merit. Most of the cases which appellants cite in support of their contention are cases dealing with executory contracts to convey and not with executed and delivered deeds of conveyance. The rule in Texas is set forth in the case of Rogers v. Rogers, 15 S.W.2d 1037, 1039, decided by the Commission of Appeals of Texas, wherein the following language is employed: "When an instrument conforms to the requirements of this statute [Art. 1294], and purports an executed conveyance of land, the delivery of such instrument has effect, as between the par-

ties, to vest title in the grantee in all respects the same when there is no consideration for the conveyance as when there is one."

In their brief and in argument before this Court, appellants urged and called to the attention of the Court other evidence of what they called fraud and deceit practiced by appellee, Adele Ramm. The only ground for cancellation which they plead and upon which they requested a jury finding is that which we have discussed. If other grounds were tried by consent and without pleadings, the burden was upon appellants to request issues thereupon, absent which they must be deemed to have abandoned such grounds.

We consider that the conclusions which we have stated with reference to the jury finding responsive to Special Issue No. 4 are determinative of this litigation in so far as the merits of the case are concerned, and, absent some procedural error, require an affirmance of the judgment of the court below.

The points of error asserted by appellants are as follows:

## "Point of Error No. 1

"The Court erred in declining to sustain plaintiffs' special exception to Paragraph IV of defendants' First Amended Original Answer wherein it was charged 'that each and every year the taxes on said land as well as the maintenance of said property were paid for out of community funds by Emil and Adele Ramm; that Henry Ramm and Anna Ramm have not at any time paid or offered to pay any of the taxes due on said land.' All of the quoted allegations were excepted to, because the same were not relevant to any issue in the case and constituted no affirmative defense to plaintiffs' cause of action.

## "Point of Error No. 2

"The Court erred in declining to sustain plaintiffs' special exception to Paragraph

VI of defendants' First Amended Original Answer wherein it is charged and alleged 'that for thirty-two long years since plaintiffs, Henry Ramm and Anna Ramm, executed said deed to Emil Ramm, they and each of them, by their inaction ratified the terms and conditions of said deed and especially the receipt of the $4,320 cash consideration, which they expressly recited in said deed; and that at no time during the said thirty-two long years have they, or either of them, ever raised a voice in denial of the recitals in said deed, and it was not until their brother, Emil Ramm, and the husband of this defendant, Adele Ramm, had his lips closed by death so that he could not speak out against the fraudulent scheme and devices of these plaintiffs, his brother and sister, Henry Ramm and Anna Ramm, that they uttered a sound, and this defendant, Adele Ramm, would show that they are not only estopped to deny each and every recital in their said deed dated January 18, 1923, when they executed a deed conveying the land involved in this lawsuit, but their demands at this time are stale and each of them are guilty of laches in attempting to show this Court, after the passage of thirty-two long years from the date of said deed.' The Court at the time the exceptions were presented to him remarked that he would carry the exceptions along with the case and thus permitted defendants to read to the jury all of said irrelevant, nonsensical and prejudicial matter to plaintiffs' great prejudice.

## "Point of Error No. 3

"The Court erred in admitting in evidence over the timely objections of plaintiff to the deposition testimony of the witness Alex Jones to the following question: 'When you sold this land to Emil Ramm, you sold it for the full value that you could get from anybody else, and he paid the full value; is that right?' He answered, 'That is right.' Plaintiffs requested that the answer be stricken because it doesn't show that he ever dealt with anybody else; that he knew anything of market value or

full market value. The witness was never qualified on the subject.

"Point of Error No. 4

"The Court erred in declining to sustain plaintiffs' Motion for an Instruction to the Jury at the close of all testimony by both plaintiffs and defendants, to return a verdict for plaintiffs.

"Point of Error No. 5

"The Court erred in submitting to the jury Special Issue No. 2 which reads as follows: 'Do you find from a preponderance of the evidence that Emil Ramm inherited the land?' because the uncontroverted evidence shows that the land in question was a part of the estate of John and Francisca Ramm, the parents of Anna, Joe, Henry and Emil Ramm; that when the parents died, their entire estate consisting of real and personal property immediately vested in the four children jointly and they became co-tenants.

"Point of Error No. 6

"The finding of the jury to Special Issue No. 2 is not only contrary to the evidence but is contrary to the undisputed evidence.

"Point of Error No. 7

"The Court erred in submitting Special Issue No. 3 over the timely objection of plaintiffs because the issue as framed by the Court assumed that Emil purchased the land and the same shifted the burden of proof.

"Point of Error No. 8

"The Court erred in not sustaining plaintiffs' motion made at the close of the evidence by both plaintiffs and defendants to instruct the jury to return a verdict for plaintiffs on the issue of no consideration, because the defendant testified that she did not pay the $10.00 nor did she give to plaintiffs anything of value as a consideration for the conveyance to her of the land in question and sought to be recovered in this suit. Plaintiffs testified that they did not

have such love and affection for defendant as prompted them to convey their undivided 2/3 or 1/2 of 360 acres of land to defendant.

"Point of Error No. 9

"The Court erred in instructing the jury that love and affection was a good consideration, thus applying it generally without regard to relationship of consanguinity, whereas he should have given a definition of the law as it pertains to relationship of consanguinity (blood relationship) from which natural love and affection arise and should have restricted it to natural love and affection, since it does not apply between persons who are not related by consanguinity.

"Point of Error No. 10

"The Court erred in construing the finding of the jury to Special Issue No. 5 as a finding by the jury that it was good consideration and sufficient to support and sustain the deed, dated January 21, 1955, notwithstanding the evidence of grantors that they did not have such love and affection for grantee as would have prompted and moved them to convey 120 acres of land to grantee worth approximately $1,-000.00 and their testimony was not contradicted.

"Point of Error No. 11

"The Court erred in rendering judgment on the verdict of the jury because there is no evidence to support such a verdict.

"Point of Error No. 12

"The Court erred in not granting a new trial because the verdict of the jury is contrary to the overwhelming preponderance of the evidence."

Points Nos. 1 and 2 are directed to pleadings of the appellees, based upon which the trial court submitted Special Issues 2 and 3, which we have already discussed. We agree that the issues should not have been submitted for the reasons heretofore set forth; however, the judgment of the

trial court does not rest upon the jury verdict responsive to those issues, but as we have stated rests entirely upon the answer to Special Issue No. 4. Appellants do not point out, and we are unable to see, in what manner the complained-of action of the trial court could have been prejudicial to them in so far as Issue No. 4 is concerned. If, as they contend, the trial court erred, the error was harmless and immaterial. The same conclusion is compelled with reference to the testimony to which they object in Point No. 3. In so far as this appeal is concerned, Points Nos. 4, 8, 9 and 10 depend for their applicability upon the correctness of appellants' contention that the January, 1955, deed is void for lack or inadequacy of consideration. We have already discussed that contention.

Point No. 6 is not argued by appellant, however we have already pointed out the immateriality of the special issue complained of.

We have already discussed the evidence in the record which supports the jury verdict responsive to Special Issue No. 4 and thereby dispose of appellants' Points Nos. 11 and 12.

We sustain Points Nos. 5 and 7, but hold that any error in the submission of the complained-of issues is, as heretofore pointed out, harmless and immaterial.

During the pendency of this case on the docket of this Court appellants filed a motion for certiorari, the stated purpose of which was to correctly reflect the action of the trial court in ruling upon bills of exception taken by appellants for the purpose of preserving the errors to which their Points Nos. 1 and 2 are directed. This Court ordered the motion taken with the case. The motion has not since that time been again urged upon this Court and we consider that our rulings referable to appellants' points Nos. 1 and 2 make it unnecessary for us to act formally upon such motion. However, in order that the motion may be disposed of, it is ordered that it be denied.

Finding no error in the record which requires a reversal of the judgment appealed from, that judgment is accordingly in all things affirmed.

CODY, J., not sitting.