In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

NO. 09-21-00264-CV
_____

**TODD EVAN FOGAL, Appellant**

**V.**

**NEIL EDWARD FOGAL, Appellee**

_____

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-207,387**

_____

**OPINION**

Complaining the trial court erred in finding that a lot in the City of

Beaumont (the Property) is jointly owned,[1] Todd Evan Fogal appeals

---

[1]The Property is more fully described as Lot Number Forty-three (43) and the East one foot (E. 1') of Lot Forty-two (42), in Block Number One (1), of REGENCY PARK ADDITION to the City of Beaumont, Jefferson County, Texas, according to the map or plat of record in Volume 10, Page 142, of the Map Records of Jefferson County, Texas; commonly known as 7645 Wickersham Place, Beaumont, Jefferson County, Texas.

1

from an order granting Neil Edward Fogal's application to compel the Property's partition and sale. On appeal, Todd contends that he became the sole owner of the property upon his mother's death. Todd traces his ownership of the Property to a 2014 conveyance from the Fogal Family Trust, in which the trustee of the Trust conveyed the property to him and to his mother as joint owners with "rights of survivorship." But Todd's problem is that around four years later in 2018, his mother conveyed her undivided interest in the Property to her other son, Neil. So, when Marjorie died in 2021, she no longer owned an undivided interest in the Property, leaving her sons to resolve the issue over the Property that led to this dispute. The trial court resolved the dispute in Neil's favor. On appeal, Todd claims his survivorship rights in the Property were not destroyed by his mother's conveyance of her undivided interest in the Property to Neil.

Because we conclude the 2014 deed from the Trust did not restrict Marjorie's power to convey her undivided interest in the Property to Neil, Todd and Neil became joint owners of the Property in 2018 when Marjorie conveyed the property to Neil. Because we conclude the trial court correctly ordered a partition of the Property, we will affirm.

2

Background

Marjorie Ann Fogal is Todd's and Neil's mother. As is relevant here, in 2014 Marjorie was the trustee of the Fogal Family Trust. As the trustee of the Trust, she signed a deed conveying the Property from the Trust jointly to herself and Todd.

In the trial court and on appeal, no one has challenged Marjorie's powers under the Trust to convey property from the Trust to herself or her sons.[2] Todd also has not claimed that Marjorie didn't have the mental capacity required to execute the 2018 deed conveying her undivided interest in the Property to Neil. Rather, the question they contest concerns the legal effect of the language in the two deeds.

On one hand, Todd contends the 2018 deed his mother signed conveying the Property to Neil did not cut off his survivorship rights in the Property, a survivorship right he acquired under his deed from the Trust. According to Todd, his survivorship right matured when, in March

---

[2]Generally, unless authorized by the powers given to the trustee in the instrument creating the trust, a trustee isn't authorized to buy property from the trust or sell property to a relative of the trustee. Tex. Prop. Code Ann. §§ 113.001, 113.053(a). That said, the instrument that created the Trust is not before us, and as already mentioned, no one challenged Marjorie's powers under the Trust.

2021, Marjorie died and when that occurred the Property reverted to him. On the other, Neil contends that he and Todd became tenants in common in the Property when his mother conveyed her undivided interest in the Property to him. Neil also argues that by conveying an undivided interest out of a joint tenancy, a joint tenant destroys whatever benefit the surviving joint tenant might have received under the survivorship clause of a joint tenancy deed.

Turning to the text of the 2014 deed, nothing in it prevented Marjorie from conveying her undivided interest in the Property to someone else. Instead, the granting clause provides that Marjorie (as trustee of the Trust) grants the Property to Marjorie and Todd "as joint owners with rights of survivorship . . . and not as tenants-in-common." Then in March 2018, Marjorie conveyed "All of Grantor's undivided interest in" the Property to Neil. Under the 2018 deed to Neil, Marjorie reserved a life estate in the Property, but provided that "[u]pon the death of Grantor, full record title shall vest in Grantee." The 2018 deed identifies Marjorie as the Grantor and Neil as the Grantee.

After Marjorie's death in 2021, Neil sued Todd and sought an order partitioning the Property. He also asked the trial court to order the

4

Property sold.[3] Todd answered the petition, filed a cross-action, and asked for a declaratory judgment to "straighten out title" under the two deeds. Todd alleged that "because he survived Marjorie Ann Fogal[,]" he owns the property's entire fee.

After Todd answered, Neil moved for summary judgment. In his motion, Neil argued that based on the deed his mother signed in 2018, Todd's joint tenancy with Marjorie ceased to exist. According to Neil's motion, the conveyance in 2018 made him a tenant in common in the Property with Todd, which before 2018 had been jointly owned by Todd and their mother. So Neil concluded that as a cotenant with Todd, he (Neil) had an absolute right to a court order requiring the Property to be partitioned and sold. Neil added the procedures to be followed in any court-ordered sale are the procedures in Chapter 23A of the Property Code, as the Property is *Heirs' property* as that term is defined by section 23A.002(5) of the Property Code.[4]

---

[3]*Id*. §§ 23A.001-.009 (the Uniform Partition of Heirs' Property Act). We didn't mention the date Neil sued because the Plaintiff's Original Petition isn't in the Clerk's Record, and we can't determine from what is included in the appellate record when the suit was first filed.

[4]*Id*. § 23A.002(5) (defining *Heir's property* as "real property held in tenancy in common that satisfies" the requirements listed in section

Besides his claims seeking affirmative relief as to the Property itself, Neil moved for summary judgment on Todd's crossclaim alleging that he (Todd) acquired Marjorie's undivided interest in the property when she died and on Todd's request for declaratory relief. Neil relied on the same arguments—that the 2018 deed cut off Todd's right of survivorship claim—that he relied on to seek an order that the Property be partitioned and sold. As for Todd's Declaratory Judgments Act claim, Neil argued the claim should be dismissed because: (1) the dispute was already before the trial court when Todd filed his cross-action seeking declaratory relief; and (2) declaratory judgment actions are not the proper form of actions that resolve questions over who has title to land. According to Neil, claims to resolve issues of title must be tried as actions in trespass to try title.

Neil attached the following evidence to his motion for summary judgment: (1) a copy of Todd's Answer and Cross-Action; (2) a copy of the deed from the Trust, conveying the Property from the Trust to Marjorie and Todd as joint owners with rights of survivorship; and (3) a copy of

23.002(5) and that apply upon filing the application that seeks the partition).

6

the 2018 deed, conveying Marjorie's undivided interest in the Property to Neil.

In Todd's written response to Neil's motion, Todd argued the 2018 deed conveyed "no ownership interest in the property involved in this suit" to Neil. He asked the trial court to rule that in 2021 when Marjorie died, Todd's deed became void. According to Todd, "[b]ecause the interest transferred to [Neil] was a defeasible interest making it subject to [Marjorie's] outliving [Neil]," Todd's "title was lost when his mother died."[5]

Following a hearing, the trial court granted Neil's motion for summary judgment. In its order, the trial court found that (1) Neil and Todd each own an undivided 50% interest in the Property; (2) the Property is "heirs" property as defined by Chapter 23A of the Property Code; and (3) dismissed Todd's Uniform Declaratory Judgments Act claim.

---

[5]Websters defines *defeasable* as "capable of being or liable to being voided, annulled, or undone : subject to defeasance esp. by being cut off through the exercise of a power or the happening of an event[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 590 (2002).

Nearly three weeks later, Todd filed a supplemental answer and motion for new trial. In his supplemental answer, Todd alleged the Property "was jointly owned property in which he has a valid interest and further, is a homestead" that "cannot be partitioned by kind or by sale." In his motion for new trial, Todd argued that the 2018 deed to Neil "would only come into effect in the event Marjorie Fogal outlived Todd Fogal." Todd concluded that as his homestead, the Property was not subject to being partitioned by a court because Neil didn't acquire an equal ownership interest in the Property since the contingency Marjorie created in the 2018 deed conveying the property to Neil—which Todd argued was Marjorie's outliving Neil—never occurred.

The trial court allowed Todd's motion for new trial to be overruled by operation of law.[6] This appeal followed. On appeal, neither party argues that either deed is ambiguous.

## Standard of Review

When "construing an unambiguous deed, we ascertain the intent of the parties from the language of the deed."[7] We determine what the

---

[6]Tex. R. Civ. P. 329b(c), (e).
[7]*Jordan v. Parker*, 659 S.W.3d 680, 684 (Tex. 2022).

parties intended by examining the language in the "four corners" of the deed. We also examine all the language in the deed without reference "to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules."[8] And we "presume that the parties to a deed intend every clause to have some effect and in some measure to evidence their agreement."[9] "The construction of an unambiguous deed [] presents a question of law that we review de novo."[10]

## Analysis

Both Neil and Todd agree the two deeds at issue, both of which were signed by Marjorie—one in 2014 in her capacity as a trustee of a trust and the other in 2018 in her individual capacity as the owner of an undivided interest in the Property—are unambiguous. However, they differ over the legal effect of the deeds. Todd argues that under the 2014 deed, he and Marjorie owned the Property as joint tenants with a joint right of survivorship. Because he had a joint survivorship right with his mother, Todd claims, when Marjorie died his survivorship interest in her

---

[8] *Chi. Title Ins. Co. v. Cochran Invs., Inc.*, 602 S.W.3d 895, 900 (Tex. 2020).
[9] *Id.* (cleaned up).
[10] *Id.*

9

undivided interest matured, and he became (he claims) the sole owner of the Property. As to the 2018 deed to Neil, Todd interprets that deed as a deed he had the right to choose to elect to void when his mother died because (he claims) the deed prejudiced his right to inherit the property under the survivorship clause of his 2014 deed.[11]

In contrast, Neil argues that when Marjorie conveyed her undivided interest to him in the 2018 deed, reserving a life estate for her benefit, she destroyed the joint tenancy created by the 2014 deed and made Neil and Todd tenants in common regarding their rights of ownership in the Property. To be sure, Neil construes the deed from the Trust—the deed on which Marjorie's rights of ownership in the Property are found—as having left Marjorie free to dispose of her undivided interest in the Property as she saw fit. He notes that the language in the deed from the Trust doesn't restrict Marjorie from disposing of the Property. And Neil points out that no language in the 2018 deed shows Marjorie intended to delay the vesting of his ownership of the Property to a date after the date she delivered the deed to him.

---

[11]In 2018 when Marjorie conveyed her undivided interest in the Property to Neil, she was around 88 years old.

As to the 2018 deed, the plain language of the deed shows that Marjorie conveyed her undivided interest in the Property to Neil. These three considerations lead us to that conclusion.

First, Marjorie acquired her undivided interest in the Property under a General Warranty Deed from the Trust. The Trust as the Grantee under the 2014 deed "Granted, Sold, and Conveyed" the Property to Marjorie and Todd "as joint owners with rights of survivorship[.]" To be fair, the conveyance contains rather standard language stating the deed is subject to "existing encumbrances, conditions and restrictions . . . as now reflected by the records of the County Clerk of Jefferson County, Texas." Even so, in the trial court, Todd never argued, claimed, or presented any evidence showing that he and Marjorie acquired anything but a fee simple interest in the Property under the deed from the Trust. Stated another way, there is no evidence in the record of any encumbrances, conditions, or restrictions as of the date that Marjorie, as the trustee for the Trust, executed the deed. Thus,

11

when the Trust delivered the deed, Marjorie and Todd became joint tenants in the Property with rights of survivorship.[12]

Second, none of the language in the deed from the Trust restricted Marjorie's right to dispose of her undivided interest in the Property. Under Texas law, "an estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised by construction or operation of law."[13] And while the 2014 deed created survivorship rights in the Property for both Marjorie and Todd, both of their survivorship rights were contingent and uncertain for each since whether Todd or Marjorie would inherit the other's interest under the 2014 deed depended (among other things) on whether the other grantee was the first to die. More to the point, because

---

[12]*Rogers v. Rogers*, 15 S.W.2d 1037, 1039 (Tex. 1929) ("When an instrument conforms to the requirements of [the general statutory provision that applied to requirements for deeds at that time], and purports an executed conveyance of land, the delivery of such instrument has effect, as between the parties, to vest title in the grantee in all respects."). *See also* Tex. Est. Code Ann. § 111.001 ("Notwithstanding Section 101.002, two or more persons who hold an interest in property jointly may agree in writing that the interest of a joint owner who dies survives to the surviving joint owner or owners."); Tex. Prop. Code Ann. § 5.021 ("A conveyance of an estate . . . in land [ ], must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing.").

[13]Tex. Prop. Code Ann. § 5.001(a).

both Marjorie and Todd owned their interest in the Property with no restriction prohibiting the other from selling or alienating their interest in the Property, the rights of survivorship depended on both parties owning their interest in the Property until the other died.

Third, Texas looks to the English common law when it "is not inconsistent with the constitution or laws of this state."[14] Under English common law, the sale of one joint tenant's interest in a property held by joint tenants cuts off the survivorship rights that the surviving joint tenant would have otherwise enjoyed had the property not been sold.

At English common law, creating and continuing a joint tenancy requires four coexisting unities – "the unity of *interest*, the unity of *title*, the unity of *time*, and the unity of *possession*."[15] Under the common law, when a party disposed of their interest in property held in a joint tenancy, disposal by one of the joint tenants destroyed the unity of title, which

---

[14]Tex. Civ. Prac. & Rem. Code Ann. § 5.001 (West & West Supp. 2022). Even though the legislature amended section 5.001 after Marjorie signed the deeds, the changes that it made to section 5.001 are not relevant to Todd's appeal.

[15]2 W. BLACKSTONE, COMMENTARIES, *183 (available at <https://archive.org/details/bim_eighteenth-century_commentaries-on-the-laws_blackstone-william_1768_2/page/183/mode/1up>) (last checked 4/14/23).

destroyed the joint tenancy.[16] As to the effect of a conveyance on the

requirements of unity, Blackstone in his COMMENTARIES ON THE LAWS OF

ENGLAND stated:

> The jointure may be destroyed, by destroying the unity of *title.*
> As if one joint-tenant alien[at]es and conveys his estate to a
> third person: here the joint-tenancy is severed, and turned
> into tenancy in common; for the grantee and the remaining
> joint-tenant hold by different titles (one derived from the
> original, the other from the subsequent grantor)[.][17]

A short time later, Blackstone explained what happens to the

survivorship rights that would have otherwise existed had the joint

tenancy continued and the required coexisting unities not been

destroyed. As Blackstone put it: "And, whenever or by whatever means

the jointure ceases or is severed, the right of survivorship or *jus*

*accrescendi* the same instant ceases with it."[18]

To the extent the law in Texas on joint tenancies is developed, our

law is not inconsistent with the English common law. Turning first to the

caselaw, Todd acknowledges the one case that he located examining the

---

[16]*Id.* at *185.

[17]*Id.*

[18]*Id.* at *186. The Latin term *jus accrescendi* means "[t]he right of
the survivor or survivors of two or more joint tenants to the tenancy or
estate, upon the death of one or more of the joint tenants."
https://dictionary.thelaw.com/jus-accrescendi/ (last checked 4/14/23).

issue held "that a conveyance to a stranger destroyed the joint tenancy and the right of survivorship making the property eligible for partition."[19] As to Texas statutes, the area that is the most developed and litigated on joint tenancies involves bank accounts. Typically, the dispute involves whether an agreement creating the account made it jointly owned and subjected the money remaining in the account to the surviving account holder's survivorship claim. In one such dispute, *Stauffer v. Henderson*, 801 S.W.2d 858 (Tex. 1990), the Texas Supreme Court discussed the general development of joint tenancies in Texas and how the law in Texas as to joint tenancies has evolved since 1848.[20]

Under the banking statute and the language governing the agreement that applied to the account at issue in *Stauffer*, the *Stauffer* Court noted: "On the death of one party to a joint account, all sums in

---

[19]*Hoover v. El Paso Nat'l Bank*, 498 S.W.2d 276, 278 (Tex. App.—El Paso 1973, writ ref'd n.r.e.) ("The act of the joint tenant in conveying her interest in the property to a stranger operated to sever that interest form the joint tenancy. The result was that share which was conveyed then was discharged from the incident of joint tenancy, and passed to the grantee to be held by him as a tenant in common.")

[20]*Stauffer v. Henderson*, 801 S.W.2d 858, 860 (Tex. 1990) (pointing out that under the statutory scheme in 1848, the joint tenant's share on the joint tenant's death didn't survive to the other joint tenant, and instead descended to and vested in the joint tenant's heirs).

the account on the date of the death vest in and belong to the surviving party as his or her separate property and estate."[21] Even though the provision we have quoted has since been moved from the Probate Code to the Estates Code, the language of the survivorship provision relied on in *Stauffer* has not changed.[22] All the same, when a bank account is jointly owned, the statute vests only the money *on deposit in the account* in the joint-account holder that survives.[23] So there must be money on deposit in the jointly owned account when the decedent dies before the surviving joint-account holder benefits from the survivorship right of a jointly owned bank account. And by statute, the existence of a right of survivorship to a jointly owned bank account does "not affect the withdrawal power of those persons under the terms of an account contract."[24]

The following considerations persuade us that Marjorie's decision to deed her undivided joint interest in the Property to Neil cut off the

---

[21]*Id.* at 863 (citing Tex. Prob. Code Ann. § 439(a), which was repealed and replaced with Tex. Est. Code Ann. § 113.151(b)).

[22]*Compare* Act of May 17, 1979, 66th Leg., R.S., ch. 713, § 439(a), 1979 Tex. Gen. Laws 1758, *with* current version at Tex. Est. Code Ann. § 113.151(b).

[23]*Id.* (emphasis added).

[24]Tex. Est. Code Ann. § 113.101(2).

expectancy interest that Todd might have otherwise realized had Marjorie continued to own the property in joint tenancy with Todd until her death.

First, Todd doesn't dispute that Marjorie conveyed the Property to Todd in 2018; instead, he argues that when Marjorie died in 2021, her undivided interest in the Property reverted to him based on the survivorship rights he claims to the Property under his 2014 deed. To be sure, Todd's construction of his survivorship claim seeks to preserve his claim, but his argument that his right survived the conveyance of the Property to Neil conflicts with the English common law requirement that unity of title must continue throughout the joint tenancy. And as the 2014 deed from the Trust conveying the property to Marjorie and Todd didn't restrict Marjorie or Todd from disposing of their interests, by conveying her interest in the Property to Neil in the 2018 deed, Marjorie destroyed the unity of title needed to maintain the Property in a joint tenancy with Todd. Todd fails to explain how Marjorie on the one hand could convey title to the Property to another but on the other hand maintain the unity of title with Todd, her joint tenant but nonetheless maintain the unity of title required to preserve the joint tenancy.

We conclude that Texas law on the issue of the survivorship rights of a former joint tenant in the interest of a share previously held by a member of the joint tenancy who disposed of their share is not inconsistent with the rule applicable at English common law. Consequently, because the 2014 deed did not restrict Marjorie from conveying her interest to Neil, her conveyance of her interest in the joint tenancy cut of Todd's right to claim he acquired his mother's undivided interest in the Property at her death. We overrule Todd's first issue.

Todd's Homestead Claim

After the trial court granted Neil's motion for summary judgment, Todd filed a motion for new trial and claimed the Property as his homestead. As his homestead, Todd alleged, the Property is not subject to being partitioned or sold. As an avoidance or affirmative defense, however, Todd had to raise this claim in his answer or in his response to Neil's motion for summary judgment.[25]

On appeal, we cannot consider an issue on appeal as a ground for reversing a trial court's ruling on a motion for summary judgment when the issue was not presented to the trial court in a timely filed motion or

---

[25]Tex. R. Civ. P. 94.

response.[26] Todd's motion for new trial was not timely, as the rules of procedure require a response and supporting affidavits to be filed at least twenty-one days before the hearing on motions for summary judgment.[27] Finally, Todd has not argued the trial court erred in denying his motion for new trial.

Because Todd didn't preserve his second issue for appellate review, it is overruled.

## Conclusion

For the reasons explained above, the trial court's judgment is AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on October 14, 2022
Opinion Delivered May 4, 2023

Before Horton, Johnson and Wright, JJ.

---

[26]*Id*. 166a(c); *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 545 (Tex. 2017).
[27]Tex. R. Civ. P. 166a(c).

19