Reversed and Remanded and Opinion filed July 21, 2011.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00167-CV



 

COMUNIDAD BALBOA, LLC, Appellant

V.

CITY OF NASSAU BAY, Appellee

 



On Appeal from the 164th
District Court

Harris County, Texas

Trial Court Cause No. 2005-55420



 

OPINION

Comunidad
Balboa, LLC (“Comunidad Balboa”) appeals the trial court’s order granting the
City of Nassau Bay’s (“the City”) motion for summary judgment and denying
Comunidad Balboa’s motion for summary judgment.  We reverse and remand.

I.   Background

Comunidad
Balboa was formed in 2003 as a wholly owned subsidiary of Comunidad
Corporation.  In December 2003, Comunidad Corporation, through nine wholly
owned limited liability companies (including Comunidad Balboa), purported to
purchase nine apartment complexes from nine limited partnerships (“the Limited
Partnerships”).  As part of the transaction, Comunidad Balboa purported to
purchase an apartment complex located in the City from Balboa Partners, Ltd.
(“Balboa Partners”).  

In 2004,
Comunidad Balboa applied for an ad valorem tax exemption for the
apartment complex for 2004 and part of 2003 pursuant to section 11.182 of the
Tax Code.  See Tex. Tax Code Ann. § 11.182 (West 2008).  Harris County
Appraisal District (“HCAD”) granted the exemption, and the City filed a protest
with the Harris County Appraisal Review Board (“HCARB”).  Following a hearing,
HCARB affirmed the exemption.  The City then filed a petition for de novo
review in the district court.  The district court entered a default judgment
against Comunidad Balboa.  However, we reversed the default judgment and
remanded for further proceedings.  Balboa v. City of Nassau Bay, No.
14-07-00259-CV, 2008 WL 442583 (Tex. App.—Houston [14th Dist.] Feb. 19, 2008,
no pet.) (mem. op.).  On remand, both parties filed competing motions for
summary judgment.  The district court granted the City’s motion and denied
Comunidad Balboa’s motion.

II.   Property-Tax Exemption

            In its first
and second issues, Comunidad Balboa contends the trial court erred by granting
the City’s motion for summary judgment and denying Comunidad Balboa’s motion. 
Specifically, Comunidad Balboa argues the trial court erred by determining the
evidence conclusively established that Comunidad Balboa is not entitled to a
tax exemption under section 11.182.

A.   Standard of
Review and Applicable Law

In a
traditional motion for summary judgment, the movant must show there is no
genuine issue of material fact and he is entitled to judgment as a matter of
law.  Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548 (Tex. 1985).  We review a summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  We take as true
all evidence favorable to the nonmovant, indulging every reasonable inference
and resolving any doubts in the nonmovant’s favor.  Id.  When both
parties move for summary judgment on the same issues and the trial court grants
one motion and denies the other, we review the summary-judgment evidence
presented by both parties, determine all questions presented, and render the judgment
the trial court should have rendered.  Id.  We may consider evidence
presented by both parties in determining whether to grant either motion.  See
Knighton v. Int'l Bus. Machs. Corp., 856 S.W.2d 206, 208–09 (Tex.
App.—Houston [1st Dist.] 1993, writ denied); River Oaks Shopping Ctr. v.
Pagan, 712 S.W.2d 190, 193 (Tex. App.—Houston [14th Dist.] 1986, writ ref’d
n.r.e.).

Section
11.182 provides an ad valorem tax exemption for certain community
housing development organizations (“CHDO”) that own property for the
purpose of building or repairing housing for sale or rental to low- and
moderate-income individuals or families.  Tex. Tax Code Ann. § 11.182(b).  However, a CHDO “may not
receive an exemption under Subsection (b) . . . for property for a tax year
unless the organization received an exemption under that subsection for the
property for any part of the 2003 tax year.”  Id. § 11.182(j).  Thus, a
CHDO must have received the tax exemption in 2003 to be eligible for the
exemption in subsequent years.       

B.        Analysis

In its
motion for summary judgment, the City argued that the evidence conclusively
negated Comunidad Balboa’s entitlement to a tax exemption because it did not
own the subject apartment complex in 2003.  If true, subsections 11.182(b) and
(j) prohibited Comunidad Balboa from receiving the exemption in 2003 or any
subsequent year.  Accordingly, we must determine whether the evidence
conclusively negated Comunidad Balboa’s ownership of the apartment complex during
any portion of 2003.

A
“special warranty deed” dated December 30, 2003, in which Balboa Partners
purported to convey the apartment complex to Comunidad Balboa, is included in
the evidence.  In a certificate of delivery signed December 30, 2003, the
Limited Partnerships and Comunidad Corporation acknowledged delivery of the
warranty deeds and conveyances of the apartment complexes.  The evidence also
includes a promissory note in which Comunidad Corporation agreed to pay the
Limited Partnerships’ trustee the designated purchase price for the apartment
complexes.  In a December 30, 2003 agreement between the Limited Partnerships
and Comunidad Corporation (collectively referred to as the “Transaction
Parties”), they recognized execution and delivery of the promissory note, deeds
conveying property, and certificates of delivery.  The Transaction Parties also
executed deeds reconveying the property to the Limited Partnerships if certain
conditions were not fulfilled and recognized certificates of delivery for these
reconveyance deeds.  The documents pertaining to conveyance and reconveyance
were collectively described as the “Transaction Documents.”  The transfer of
the apartment complexes pursuant to the conveyance deeds was described as the
“Transaction.”  The conditions were outlined as follows:

Sellers and
Buyer acknowledge that certain benefits will be derived from the Transaction. 
Sellers and Buyer also acknowledge that the benefits to be derived from the
Transaction are inherently conditional, and that, as such, if such
conditions are not met, the Transaction will need to be nullified and made of
no further force and effect.  Those conditions include the granting of ad
valorem tax exemptions by [HCAD] on each Apartment Complex, and the approval of
the Transaction by each current lender . . . of each Apartment Complex
constituting the Property.  The Transaction Documents will be held in escrow
pending the occurrence, if ever, of these conditions.  

Seller and Buyer are executing this Agreement in order to set forth the
conditions which must occur in order for the Transaction to be fully
consummated and the [conveyance deeds] to be delivered out of escrow to
Buyer and filed of record in the Real Property Records of Harris County, Texas,
and to set forth the procedure to nullify the Transaction if such conditions are
not met.

(emphasis added).  The agreement
also contained the following provisions: 

Upon
consummation of the Transaction, each Seller will deliver to Buyer the
[conveyance deeds along with the [certificates of delivery].  The [conveyance
deeds] will be held in escrow by Buyer’s and Sellers’ counsel and not filed of
record in Harris County, Texas, until the [conditions] have been satisfied . .
. .  Upon consummation of the Transaction, Buyer will deliver to each Seller
the [reconveyance deeds] along with the [certificates of delivery for the
reconveyance deeds].

In
construing a contract, we must ascertain the true intentions of the parties as
expressed in the writing.  J.M. Davidson, Inc. v. Webster, 128 S.W.3d
223, 229 (Tex. 2003).  We must examine and consider the entire writing in an
effort to harmonize and give effect to all of its provisions so that none will
be rendered meaningless.  Id.  Additionally, when parties execute
multiple written agreements to complete a transaction, we attempt to find
harmony between and within the agreements in determining the parties’ intent.  See
Fort Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831,
840 (Tex. 2000); Harris v. Rowe, 593 S.W.2d 303,
306–07 (Tex. 1979).  Moreover, we may determine, as a matter of law, that
multiple documents comprise a written contract. Fort Worth Indep. Sch. Dist., 22
S.W.3d at 840.  A contract is not ambiguous if it is so worded that it can be
given a definite or certain legal meaning.  Wal–Mart Stores, Inc. v. Sturges,
52 S.W.3d 711, 728 (Tex. 2001).  Conversely, a contract is ambiguous if its
language is subject to two or more reasonable interpretations.  See Monsanto
Co. v. Boustany, 73 S.W.3d 225, 229 (Tex. 2002).  However,
an ambiguity does not arise simply because the parties advance conflicting
interpretations of the contract.  Sturges, 52 S.W.3d at 728.
 Rather, for an ambiguity to exist, both interpretations must be
reasonable.  Id.  We should not strain to find an ambiguity in a contract
if, in doing so, we defeat the probable intentions of the parties.  Licata
v. Licata, 11 S.W.3d 269, 277 (Tex. App.—Houston [14th Dist.] 1999, pet.
denied).

Construing
the Transaction Parties’ agreement and the Transaction Documents together, and
giving effect to all provisions, we conclude ambiguity exists regarding the
Transaction Parties’ intent to convey the property on a date certain.  One
reasonable interpretation of the agreement is that the conveyance deeds were
executed and delivered to Comunidad Corporation in December 2003 to be held in
escrow by Comunidad Corporation’s counsel pending fulfillment of two
conditions—HCAD’s grant of a tax exemption for each apartment complex and the
lenders’ approval of each conveyance.[1] 
A grantee generally acquires equitable title to property when the deed is
placed in escrow, and equitable title may support ownership for taxation
purposes.  See Tex. Turnpike Co. v. Dallas Cnty., 153 Tex. 474,
478, 271 S.W.2d 400, 402 (1954).  However, a grantee does not acquire
equitable title if it does not have a present right to compel legal title, and
a grantee does not have a present right to compel legal title when performance
of conditions for conveyance is dependent on someone other than the grantee.  Id. 
Here, performance of the conditions was dependent on HCAD and the lenders.  Therefore,
if the conveyance deeds were escrowed, neither Comunidad Corporation nor
Comunidad Balboa owned legal or equitable title to the apartment complex in
2003.

            Conversely,
another reasonable interpretation of the agreement is that the Transaction
Parties—notwithstanding their use of the term “escrow”—actually intended that
(1) legal and equitable title to the apartment complexes pass to Comunidad Corporation
in December 2003, (2) Comunidad Corporation would not file the deed in the real
property records until the two conditions were satisfied,[2]
and (3) Comunidad Corporation would reconvey any apartment complex for which
the conditions were not satisfied.  We recognize that “the
legal effect of a deed cannot be varied simply by showing that the grantor
misunderstood the legal effect of its terms, or intended a different effect from that which the language
imports.”  Davis v. Davis, 141 Tex. 613, 618, 175 S.W.2d 226, 229 (1943) (quoting Rogers v. Rogers, 15 S.W.2d 1037, 1039 (Tex. Comm’n App. 1929, holding approved)).  However,
certain language in the agreement creates ambiguity regarding the intended
effect of the term “escrow.”  The Transaction Parties executed reconveyance
deeds, which obviously would be necessary only if the apartment complexes had
been previously conveyed.  Moreover, although delivery of the conveyance deeds
to Comunidad Corporation does not necessarily mean that the deed cannot be
escrowed (see footnote one, supra), this fact combined with the
existence of reconveyance deeds supports a reasonable conclusion that the
parties did not intend to “escrow” the deeds in the common legal sense.[3] 
See Healthcare Cable Sys. Inc. v. Good Shepherd Hosp., Inc., 180
S.W.3d 787, 792–93 (Tex. App.—Tyler 2005, no pet.) (reversing summary
judgment after determining specific contractual term was ambiguous). 

In sum,
the Transaction Parties’ agreement is ambiguous relative to the date certain on
which Comunidad Balboa became the owner of the subject apartment complex.  Consequently,
a fact issue exists regarding whether Comunidad Balboa was entitled to a section
11.182 tax exemption on the apartment complex.  Therefore, the trial court
erred by granting the City’s motion but did not err by denying Comunidad
Balboa’s cross motion.  Accordingly, we sustain Comunidad Balboa’s first issue
and overrule its second issue.

We
reverse the trial court’s judgment and remand for further proceedings
consistent with this opinion. 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

Panel
consists of Justices Anderson, Seymore, and McCally.









[1]
We acknowledge that no escrow occurs when a deed is delivered to the grantee or
his attorney if the deed does not contain language conditioning conveyance on
some event; instead, the deed is effective and the grantee holds title.  See
Puckett v. Hoover, 146 Tex. 1, 3, 202 S.W.2d 209, 210 (1947). 
However, if a deed was physically delivered to Comunidad Balboa or its counsel
in December 2003, an escrow may have occurred if the Transaction Parties’ had a
written escrow agreement.  See Harris v. Rowe, 593 S.W.2d
303, 306–07 (Tex. 1979) (“A contract for the sale of land which creates
rights collateral to and independent of the conveyance, such as completion of
construction or escrow agreements pending construction, to that extent survives
a deed that is silent in respect to the construction or escrow agreement.”).





[2]
It is well settled that the failure to file a deed does not affect the
conveyance of title.  See Tex. Prop. Code Ann. § 13.001(b) (West 2004); see
also Jones v. Smith, 291 S.W.3d 549, 554 (Tex. App.—Houston [14th Dist.]
2009, no pet.).





[3] The City argues that the court of appeals in Hidalgo
County Appraisal District v. HIC Tex. I, L.L.C. addressed a similar
situation but concluded the buyer of an apartment complex did not own legal or
equitable title in 2003 and thus was not entitled to a tax exemption because the
executed deed was escrowed with an unrelated escrow agent pending the
performance of a condition by a third party.  No. 13-07-083-CV, 2009 WL 620468,
at *2, *3–5 (Tex. App.—Corpus Christi Mar. 12, 2009, no pet.) (mem. op.).  We
find the present case distinguishable because delivery of the deeds to
Comunidad Balboa coupled with the existence of reconveyance deeds casts doubt
regarding the denotation of the term “escrow.”